May it please the Court, Robert Lipscomb for the appellant, Juliana Lu. I want to begin by saying I'm appreciative of having had the benefit of hearing the arguments on the case that just preceded this one because there are certain similarities and certain differences between the two cases, but I think the similarities are important. As we've argued in our brief, there are essentially two exceptions to the FSIA that should apply here. The first is the A2 exception, the commercial, the direct effects in the United States. I would submit that this case is similar to both Welshover and Adler and that the issuance of the bonds by the Central Bank of China was a commercial activity. And the direct effect is the non-payment in the United States where the payment could have been. I admit there is a difference. How can non-payment be in effect? Isn't that problem A with your whole thing? I mean, it's all about what didn't happen. Your Honor, that's correct and that's what I was just about to get to. I would submit that in a sense it's a fortuity that the request for payment was made in Taiwan instead of the United States. If we were permitted to make further allegations, if the matter is remanded, there is a, that same bank has an office in New York. A request could be made there. In Adler and both Adler and Welshover, there was a request for payment in New York that was not made. As the Fourth Amendment complaint alleged, I believe it was two of the valid bonds were submitted in Taiwan, but there are close to 200 more of the same type of bonds. The plaintiff could go to New York and ask to be paid there. You can do all those things. You'll have a different case, but it's not this one. I understand that what was done is what was done. I mean, it's one thing to say you want to make new allegations about things that have already happened. It's another thing you want to do different things. Well, we can't change our allegations about what already happened. I appreciate that. But again, you know, as I have to admit, we are bound by the record that we have, and what was done is what was done. But the other point in connection with that is that, as we also allege, what the plaintiff had asked for is to be paid in gold. The gold that we are alleging and understand backs these bonds that we unfortunately weren't able to get discovery done on is physically present in the United States. To have received that payment, even if the payment has been asked for in Taiwan, the payment would still be here because this is where the gold is if that ever happened. Your whole problem is there was no payment. I mean, if there was no payment, then nothing happened in the United States. Well, as in both Weltover and Adler, there was a request for payment to be had in New York City, and there was no payment there. And the thing that what brought those within the exception was the plaintiffs in those cases could have demanded to be paid in any number of places. I think in Adler there was a whole factual dispute about whether he'd actually asked to be paid in the Grand Cayman Islands or New York, and he changed his story on that. But he could have been paid in New York, and it wasn't paid in New York, and that was what that issue was. In this same case, in our case, the actual payment, I would submit, would actually take place in the U.S. if the gold backing it were paid over to the plaintiff. But the request for payment was made where? The request was actually made by a Taiwanese attorney at the central bank's offices in Taiwan. And so when you say the payment would be made in the United States, well, not necessarily. If the payment ever were made, and if it were made in gold, what's to prevent the paying entity from shipping the gold to Taiwan, paying it in Taiwan? As far as I know, they would not be prevented from doing that. That could happen. But again, we weren't able to get discovery done on the physical presence of the gold and how much there is and how it has been used by the entity in this country. I have to say, I have trouble with a notion that this is commercial activity within the meaning of the exception to the FSIA on the notion that an asset held by the defendant might be used to pay off the debt, particularly when the debt may be paid off not in the United States, but in Taiwan. That's a stretch. And I appreciate that. And again, we're, again, bound by the record that we had. The request was made where it was made. But I would submit that the payment could take place here, and that would be commercial activity in the United States. But the other exception that I wanted to speak about is the A3 exception. It's basically the expropriation exception. And there was, there were allegations in the Fourth Amendment Complaint, arguments in the briefs about the recognition of the Republic of China and when that officially became the government of Taiwan, whether it was 1952 or some earlier date. What I would rather point to is the Fourth Amendment Complaint specifically alleges that the bonds the plaintiff had were acquired from her grandparents, who were not citizens of the Republic of China or China. So they were not citizens of that country. And that's the first prong you have to meet if you want to have this expropriation, if you want to invoke that exception. But they were citizens of Taiwan, apparently. I mean, that's the fair implication of other sentences which says they, like other citizens of Taiwan. The implication of other sentences is that at least some members of the plaintiff's family were Taiwanese citizens. So it just leads back to the same dispute about whether the, the, the, apparently, and the only explanation of what's going on here is that the, the, it leads to the dispute about whether the Republic of China was actually sovereign in Taiwan at the relevant time, not whether they were in fact citizens of Taiwan and of whoever was sovereign there. Well it could, but not necessarily, Your Honor, because I think we all are aware of circumstances where within the same family, people are citizens of different countries. There can be, for example, people who are of Mexican descent in this country. Some are U.S. citizens and some are not in the same family. No allegation. So why does that matter? I mean, she doesn't say exactly who she got the, the bonds from anyway, so. No, I believe that we, I believe that the plaintiff alleged that she acquired the bonds from her grandparents. That's who she got them from, but who got the bonds? My understanding is, is that the grandparents themselves who were not citizens of the Republic of China acquired the bonds. But we don't know what they were citizens of. And that is something that I am not sure what the answer is, Your Honor, and, and I am appreciative of that because. What I can tell is that they were Taiwanese people who lived in Taiwan, but that their argument is they weren't citizens of the Republic of China because the Republic of China wasn't in charge at the time. That's the, that's certainly an implication in the Fourth Amendment complaint. That's certainly an argument that was made below. All I'm suggesting is that the actual factual allegations is they were not citizens of the Republic of China. Let me ask it this way. Take it for the purpose of this question as true, that they lived in Taiwan. At the time they purchased the bonds, they lived in Taiwan. They might have considered themselves not to be citizens of the new Republic of China that had taken over the island. Are, is this expropriation? That is to say, are they non-citizens for purposes of the expropriation clause? Well, our, our contention would be that they are. And one thing that I would point out And what's your basis for saying that? Is there's a question that hasn't been asked yet and that I'm not sure what the answer to that question is, but the question is, what would the government of Taiwan or the Republic of China have considered them to be citizens of? That was an issue in the, in the Cacera versus Kingdom of Spain case, the woman who, who is Jewish, whose, whose painting was taken had been a German citizen, but the Nazi laws had revoked the citizenship for all Jews. So she was not a German citizen when her, when the painting was confiscated as a condition of her being able to leave the country in 1939. And one of the points in that case was that government, German, Nazi Germany, didn't consider her to be a citizen. And we don't have anything in the record that tells us whether the district court eventually said, as this is all a non-justiciable question as to who in fact was the sovereign in in Taiwan at the time. And I can't argue with that. I believe that I don't think there's any dispute that the U.S. State Department or the U.S. government consider the Republic of China to be the government of Taiwan at the time. The government, I mean, so your, your dispute instead is that the, is that the Republic of China didn't think that the people who were living there were citizens of them? Well, that these two grandparents of the plaintiff were, what I'm saying is we don't know whether they were considered to be citizens or not. And they have alleged that they were not citizens of the Republic of China at the time. And this is all something that. But in truth, aren't we going to get back to the same place? I mean, you're nitpicking at the complaint, but is there really any confusion about what's going on here? If we let you go back and amend the complaint, are you going to walk right into the same problem if you tell the truth, i.e. what were they citizens, who were they and what were they citizens of? Isn't it so that in fact that they were people who lived in Taiwan and who the Republic of China was? I can't say that one way or the other. And my, one of our main contentions on this case is that this, the question that your honor just brought up, I think would be perfectly appropriate for a motion for summary judgment that the defense could bring on that and perhaps other grounds. But when we have the allegations of a complaint that are to be accepted, the factual allegations that were made that are to be accepted as true, absent something you can pay judicial notice of or a, excuse me, or a contradiction of those, then that is the crucial... Or something else in the complaint that seems inconsistent and then on balance, the district judge says, okay, there's lots of stuff in the complaint. The allegation that they're non-citizens doesn't hold up given what else is in the complaint. Exactly. Absent that. And what I'm not saying is that this is a guaranteed win case for the plaintiff, that there's a motion for summary judgment will easily defeat it, that any of that stuff. I'm just, what we're saying is that this was not appropriate to be dismissed on a rule 12 motion at this stage. If we can't make the proper allegations under rule 11, we're not going to make them if we're given, if the case is remanded or we're given another chance to amend. I would not do that if, but at this point on the record that we have, our contention is that dismissal was not proper. And that the discovery that had been asked for, the district court should have allowed that. If the discovery had it been allowed, it might have, it might have bolstered our claim. It might have undermined our claim, as we said in the brief, undermines the claim. Then, then that presumptively makes it much more difficult for us to go forward. And, but that's, you know, we would accept that because that's what you have to do. Okay. Let's hear from the other side and then you've saved some time. Great. Thank you, Your Honor. May it please the court. Thomas Corcoran for the Republic of China and the Central Bank of China. I think that the, just two issues in this case, it was the allegation with respect to the citizenship of the, of the grandparents is in paragraph 20. It says plaintiff acquired these government bonds as gifts from her grandparents who were non-Chinese and non-ROC citizens residing in Taiwan at the age of about 10 or 11. So I think, I think that the, the reasonable interpretation of that is that they were, they were citizens of, they, they weren't citizens of China because the Chinese hadn't taken over yet and not that they were French or that they were anything else. And I think that the decision by, in the Potsdam agreement that Taiwan belonged to China, resolves the issue because as Zivotofsky, the recent decision of the Supreme Court in Zivotofsky rules, that's an issue for the executive branch and not the judicial branch, but if there's any doubt about it, then it's a political question. And I think that it's, it's an unreasonable interpretation of this, of this complaint and the argument not made below that there's something that they're, they're, they're, that they're, the reason that they're not citizens of, is citizens of China is simply because, you know, Japan took over Taiwan in 1895 and they were citizens of whatever they were before, before World War II. And the other issue is the commercial activity, first prong of the, no, I guess it's the third prong of the commercial activity exception. And I think the point there is there's no allegation in the complaint that the bonds were payable in the, their bonds were required to be paid in the United States, which is, you know, that's the holding in welfare. It's kind of what we were talking about before though, that's a, I mean, so there's a, there's a difference for purposes of that exception with whether they were required to be paid in the United States or whether they would, in fact, as a practical matter, be paid in the United States. I'm not sure that that issue is, is well, perhaps that issue is, is, I don't think that issue is ripe in this case because of course they never asked to be paid in the United States and they weren't paid, they weren't paid anywhere. I think that it, I don't know the answer to that question, but I think that the, but I, as I, as I interpret it Suppose we affirmed and next week they went and they took two more bonds and went to the bank in the, to the equivalent bank in the United States and said, here are some more bonds we want to get paid and we want to get paid in the United States. Is that now a different, it's a different case, different bonds, presumably not ratio decata, different facts, and you start all over again. Yes. Do I take it that it's undisputed between the parties for purposes of this case that bonds issued by a sovereign are commercial activity? And then question whether it comes within the scope of the commercial activity exception, but that that's commercial activity, even though the bonds are issued by a sovereign entity? I think that's the, you know, that's one of the holdings of Weltover. Yeah. I think it is undisputed that that's so. Yes. That would not be true for domestic American law. That is to say, uh, states issuing bonds are held to be sovereign and you can't hold them responsible, but that's a different question under American 11th amendment law. I don't know the issue. I, I defer to the court on that. Well, it's, and it's off to one side. I don't think you need to know that. All right. If, if, if there are no further questions, I have nothing to add. Okay. Do you have any response or anything further to say? And thank you again, uh, just to respond briefly to the, uh, uh, question, uh, from the court about what the bonds required to be paid in any particular place. There was no requirement that they be paid in what, in any particular place. And in the two, in the Adler case and the Weltover case, and in both of those cases, the, the monies that were due from the foreign governmental entity could have been paid in any number of places, but the plaintiffs that elected to have them paid in New York, and that's what brought them under the exception in those cases. So it wasn't a matter of, they had to be paid in the U S it's, they could have been paid in the U S. Well, maybe that's your next lawsuit. Thank you. Thank you. Thank you. Thank you. Oh, uh, blue versus central bank of Republic of China, Taiwan, uh, and the Republic of China, Taiwan submitted. And that concludes the argument for this morning.
judges: Fletcher, Paez, Berzon